# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHL VARIABLE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-1562-SLR-SRF |
| HUDSON VALLEY, EPL, LLC, | ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

## I.  INTRODUCTION

In this declaratory judgment action filed pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, plaintiff PHL Variable Insurance Company ("Phoenix" or "plaintiff") seeks to adjudicate its rights and obligations under a life insurance policy (the "Policy") insuring the life of Phillip E. Skidmore ("Mr. Skidmore"). Specifically, Phoenix seeks a declaration that the policy is null and void due to the lack of an insurable interest at the Policy's inception. Presently pending before the court is a motion for judgment on the pleadings, filed pursuant to Fed. R. Civ. P. 12(c) by defendant Hudson Valley EPL, LLC ("Hudson Valley" or "defendant"). (D.I. 15) For the following reasons, I recommend that the court deny defendant's motion.

## II.  BACKGROUND

Plaintiff is a life insurance company incorporated and headquartered in Connecticut. (D.I. 1 at ¶ 2) Defendant is a Delaware corporation. (*Id.* at ¶ 3)

The complaint alleges that stranger originated life insurance ("STOLI") policies have emerged in recent years, and are comparable to unlawful wagering policies that lack an insurable

interest at inception. (*Id.* at ¶¶ 8-9) The policies are not sought for legitimate insurance needs, but rather are manufactured for the benefit of third parties in the secondary insurance market. (*Id.* at ¶ 8) In a STOLI arrangement, speculators collaborate with an individual to obtain a life insurance policy in the name of that individual, and then sell some or all of the death benefit payable upon the death of the insured to stranger investors. (*Id.* at ¶¶ 7-8) To maximize the expected rate of return, STOLI speculators often target individuals who are elderly, and material information concerning the insured is often inflated or otherwise misrepresented in order to qualify for the most valuable policies with the highest death benefits at the lowest premiums. (*Id.* at ¶¶ 10-11) To conceal the nature of such policies, the insured often designates the policy holder and/or beneficiary of the proceeds to be a shell third-party entity such as a trust, and then transfers the beneficiary interest to a STOLI entity after obtaining the policy. (*Id.* at ¶ 12)

On October 16, 2007, the Phillip E. Skidmore Irrevocable Life Insurance Trust 2007-2 (the "Skidmore Trust"), by and through its trustee, U.S. Bank, N.A. ("U.S. Bank"), applied to plaintiff (the "Application") for a life insurance policy (the "Policy") in the amount of four million dollars for Mr. Skidmore. (D.I. 1 at ¶ 17) The Application represented that the Skidmore Trust, which was created on July 13, 2007, would be the proposed owner and sole beneficiary of the Policy. (*Id.*) The Application contained representations about Mr. Skidmore's net worth and income, the financing of premiums, and the applicant's intent not to transfer a beneficial interest to a third party. Plaintiff relied on such representations in determining whether Mr. Skidmore was insurable and qualified for the insurance requested. (*Id.* at ¶ 18) Specifically, the Application represented that Mr. Skidmore had a net worth of $4,500,000, earned income of $200,000, and other income of $25,000. (*Id.* at ¶ 19) The Application also represented that the Skidmore Trust did not intend to sell the Policy to a third party, the

2

premiums would not be financed, and the Skidmore Trust planned to pay $165,048 in first year premiums. (*Id.*) Mr. Skidmore signed the Application in Florida and U.S. Bank, on behalf of the Skidmore Trust, signed the Application in Minnesota. (*Id.* at ¶ 21)

On December 3, 2007, Mr. Skidmore and the Skidmore Trust also executed a Statement of Client Intent Form (the "SOCI"), which requested material information regarding the purpose of the insurance, the source of funding for premiums, whether there was any understanding that a third party would obtain an interest in the Policy and whether the insured or related parties would receive inducements in connection with the purchase of the Policy. (*Id.* at ¶ 22) Mr. Skidmore and the Skidmore Trust represented that premiums would not be financed, the funds used to pay premiums would be contributed by Mr. Skidmore, the Policy was not being purchased in connection with a program under which Mr. Skidmore had been advised of an opportunity to transfer the Policy, that there was no intent that the Policy would be sold or transferred to a third party, and that neither Mr. Skidmore nor the Skidmore Trust would receive cash or other inducement in connection with the Application. (*Id.*)

Plaintiff offered the Policy to the Skidmore Trust with a planned first year premium of $165,048 and a face amount of $4 million. (*Id.* at ¶ 25) The offer was conditioned upon receipt of an executed Policy Acceptance Form and premium payment. (*Id.*) On March 28, 2008, Mr. Skidmore, U.S. Bank, and Mark Resnick, an insurance agent affiliated with R. Binday Plans & Concepts, Ltd., executed an Acceptance of Resignation of Trustee and Appointment of Successor Trustee Form ("Resignation Form"). (*Id.* at ¶ 26) Plaintiff subsequently received the executed Policy Acceptance Form and received payment of the premium. (*Id.* at ¶ 27)

On April 2, 2010, plaintiff received a Designation of Ownership form designating Marcy Trachtenberg, Resnick's sister-in-law, as the new owner of the Policy. (*Id.* at ¶ 28) On July 6,

3

2010, plaintiff received a second Designation of Ownership form designating defendant as the new owner of the Policy. (*Id.* at ¶ 29) The Designation of Ownership form was executed by Robert Schernwetter, in his capacity as president of Hudson Valley. (*Id.*) Mr. Schernwetter is the father-in-law of Michael Binday, the vice president of R. Binday Plans & Concepts Ltd. (*Id.*)

On February 15, 2012, Resnick and Binday were indicted on numerous counts of mail and wire fraud, conspiracy, and obstruction of justice for orchestrating a $100 million STOLI scam.[1] (*Id.* at ¶ 30) The indictment alleged that Binday and Resnick fraudulently induced insurance companies to issue more than $100 million in life insurance coverage to straw buyers, which they then sold on the secondary market prior to the issuance of the policies. (*Id.* at ¶¶ 30-32)

Mr. Skidmore passed away on March 6, 2012. (*Id.* at ¶ 34) Plaintiff grew concerned that the Policy was procured in connection with a fraudulent STOLI scheme when it began processing Mr. Skidmore's death claim. (*Id.* at ¶ 35) To verify that a valid insurable interest was present at the time of the Policy's issuance, plaintiff requested certain information from defendant regarding the application for the Policy and its subsequent transfer. (*Id.*) Defendant refused to respond to plaintiff's request for information, and plaintiff did not make a decision on the Skidmore death claim in the absence of that information. (*Id.*)

Plaintiff determined that Mr. Skidmore did not have any significant net worth or income at the time he and the Skidmore Trust executed the Application, and Mr. Skidmore did not contribute the funds used to pay the Policy premiums, which were instead funded by individuals without an insurable interest in Mr. Skidmore's life. (*Id.* at ¶¶ 37-38) Plaintiff further determined that the Policy was procured by a third-party investor who lacked an insurable

---

[1] Subsequently, on July 30, 2014, Resnick and Binday were found guilty on all charges and sentenced to six years and twelve years in prison, respectively. (D.I. 18, Ex. A; D.I. 29, Exs. A & B)

4

interest in Mr. Skidmore's life, and there was an understanding that a party other than the Skidmore Trust would obtain a legal or equitable right, title, or interest in the Policy. (*Id.* at ¶¶ 39-40) According to plaintiff, there was an understanding that Mr. Skidmore or a related party would receive cash or other inducement in connection with the application for and purchase of the Policy, and the Policy was purchased with the intent that a third-party investor without an insurable interest would obtain an interest in and control over the Policy. (*Id.* at ¶¶ 41-42)

### III. LEGAL STANDARD

In a diversity action, the court must first address the threshold issue of which law governs the rights and liabilities of the parties before it. For substantive issues, the court looks to the substantive law of the forum state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The forum state's choice of law doctrine is included within its substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Under Delaware law, the law of the place where an insurance contract was made governs the obligations imposed by such contract. *Wilmington Trust Co. v. Mut. Life Ins. Co. of New York*, 177 F.2d 404, 406 (3d Cir. 1949).

Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When deciding a Rule 12(c) motion for judgment on the pleadings based on an allegation that the plaintiff has failed to state a claim, the motion "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 995, 178 L. Ed. 2d 825 (Jan. 18, 2011).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Under this standard, the court must accept all well-pleaded factual allegations as true, and must draw all reasonable inferences in favor of the non-moving party. *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). This determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION

Plaintiff's complaint seeks a declaration that the Policy is void *ab initio* for lack of any insurable interest, and the remainder of plaintiff's claims for the retention of premiums are contingent upon the ability to obtain that declaratory relief. (D.I. 1 at ¶ 47) In its motion for judgment on the pleadings, defendant argues that: (1) plaintiff is barred from asserting invalidity of the Policy because the two-year contestability period has already expired; (2) even if plaintiff's claim is not barred by the incontestability clause, plaintiff has failed to sufficiently allege a lack of insurable interest; and (3) defendant is entitled to judgment on its counterclaims. (D.I. 16 at 11, 17, 19)

### A. Applicable Law

Defendant argues that Florida law should apply to plaintiff's claims because the Skidmore Policy was delivered and issued for delivery in Florida. (D.I. 16 at 9) According to plaintiff, a choice of law analysis is unnecessary at this time because there is no inherent conflict

between Florida and Delaware law regarding insurance contracts. (D.I. 18 at 6) Even if such an analysis were necessary, plaintiff contends that it is unclear which state's law would apply because of the numerous conspirators who participated in the scheme. (*Id.* at 7)

In general, Delaware courts apply the "most significant relationship" test to determine which law to apply to contract claims. *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991). In the context of insurance contracts, Delaware courts have held that the most significant relationship is the forum in which the contract was executed. *Wilmington Trust Co. v. Mut. Life Ins. Co. of New York*, 177 F.2d 404, 406 (3d Cir. 1949). In the case presently before the court, it is uncontested that the Policy was signed by Mr. Skidmore, issued for delivery, and delivered in Florida, and the Policy Acceptance form was executed in Florida as well. *See Am. General Life Ins. v. Goldstein*, 741 F. Supp. 2d 604, 611 (D. Del. 2010) ("Delaware courts have implicitly recognized that, in the context of insurance contracts, the most significant relationship is the forum in which the contract was executed."). Therefore, the court shall apply the law of Florida.[2]

## B. Incontestability Clause

The Policy was issued on August 31, 2007, and Skidmore died on March 6, 2012. Plaintiff filed the present action on September 17, 2013, contesting the validity of the Policy despite its incontestability clause. Given the timing of the action, defendant asserts that the incontestability clause is a legal bar to plaintiff's claims. (D.I. 16 at 11-17) Specifically,

---

[2] Contrary to plaintiff's allegations, there are substantial conflicts between Delaware and Florida case authorities regarding the topics at issue in this case. *Compare Pruco Life Ins. Co. v. U.S. Bank*, C.A. No. 12-cv-24441, 2013 WL 4496506 (S.D. Fla. Aug. 20, 2013) *with PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059 (Del. 2011). Moreover, plaintiff does not meaningfully contest the application of Florida law to the present case. (D.I. 18 at 6-8) Because the facts clearly indicate that Florida bears the most significant relationship to the formation of the Policy, there is no reason for the court to postpone a ruling on which state's law applies and conduct the analysis under both Delaware and Florida law in the interim.

7

defendant contends that Florida statutory law contains no provision that renders a contract unenforceable due to a lack of insurable interest, and that the Florida Supreme Court has declined to read into the insurance statutes provisions that would render a policy void and unenforceable unless such language is expressly contained within the statute. (*Id.* at 12) Plaintiff responds that void contracts cannot be saved by their own contestability clauses under Florida law. (D.I. 18 at 14-18)

In accordance with Florida law, the court concludes that Phoenix's complaint adequately states allegations that, if proven, would render the Policy void from its inception for lack of an insurable interest. The incontestability clause would not bar plaintiff's action as no contract would exist if the Policy was void *ab initio* due to a lack of insurable interest. Section 627.455 provides that "[e]very insurance contract shall provide that the policy shall be incontestable after it has been **in force** during the lifetime of the insured for a period of 2 years . . . ." Fla. Stat. Ann. § 627.455 (emphasis added). Florida courts have interpreted this language to signify that the statute regarding incontestability clauses applies only to a policy that is "in force," noting that "the presence of an insurable interest is a fundamental prerequisite to the existence of an insurance policy under Florida law, and public policy renders a policy procured without a valid insurable interest void *ab initio*, i.e., from inception." *TTSI Irrevocable Trust v. Reliastar Life Ins. Co.*, 2010 WL 8721575, at *9 (Fla. Cir. Ct. Feb. 9, 2010); *see also Atkinson v. Wal-Mart Stores, Inc.*, 2009 WL 1458020, at *3 (M.D. Fla. May 26, 2009), *aff'd* 60 So.3d 1148 (Fla. Dist. Ct. App. 2011) ("Florida courts have long held that insurable interest is necessary to the validity of an insurance contract and, if it is lacking, the policy is considered a wagering contract and void *ab initio* as against public policy."). Because the Policy in the present action lacks an

8

insurable interest for the reasons set forth in § IV.C, *infra*, the Policy was never in force and the incontestability period never began to run.

Defendant's interpretation of the relevant statutes contradicts the construction of those statutes by Florida courts, and defendant fails to cite case authorities in support of its proposed interpretations. Defendant's reliance on *QBE Insurance Corp. v. Chalfonte Condominium Apartment Association, Inc.*, 94 So.3d 541, 552 (Fla. 2012) and *Lemy v. Direct General Financial Co.*, 885 F. Supp. 2d 1265, 1272 (M.D. Fla. 2012) is misplaced because § 627.455 expressly states that it applies only to policies that are "in force," and a policy that was void *ab initio* cannot be presumed to be valid. Defendant also fails to appreciate the distinction between void and voidable contracts recognized under Florida law:

> "In general, the difference between void and voidable contracts is whether they offend public policy. Contracts that offend an individual, such as those arising from fraud, misrepresentation, or mistake, are voidable. Only contracts that offend public policy or harm the public are void ab initio."

*New Testament Baptist Church Inc. v. State*, 993 So.2d 112, 116 (Fla. Dist. Ct. App. 2008) (quoting *Ockey v. Lehmer*, 189 P.3d 51 (Utah 2008)); *see also TTSI Irrevocable Trust*, 2010 WL 8721575, at *9. Thus, while a contestability clause may bar a challenge based on fraud or misrepresentation in an insurance application (D.I. 18, Ex. C at 6), a challenge based on a lack of insurable interest is distinct because the policy itself never came into being, and the incontestability provision never took effect in the first place, *TTSI Irrevocable Trust*, 2010 WL 8721575, at *9.

Defendant's reliance on *Pruco Life Ins. Co. v. U.S. Bank*, 2013 WL 4496506 (S.D. Fla. Aug. 20, 2013), a recent decision from the Southern District of Florida holding that an incontestability clause applies equally to policies that are void *ab initio*, is also misplaced. The

9

court in *U.S. Bank* compared a 2011 Florida case following the majority position[3] with a 1989 New York case[4] following the minority position and applying New York law,[5] and determined that the New York case was more closely aligned with Florida's public policy considerations. *Id.* at *4. The *U.S. Bank* court did not analyze or even mention the decision in *TTSI Irrevocable Trust*, 2010 WL 8721575, nor did it consider a series of Florida Supreme Court cases declaring that an insurance policy issued to a person without an insurable interest is void and does not even come into being. *See Meerdink v. Am. Ins. Co.*, 188 So. 764, 766 (Fla. 1939); *Knott v. State ex rel. Guaranty Income Life Ins. Co.*, 186 So. 788, 789-90 (Fla. 1939); *see also Atkinson*, 2009 WL 1458020, at *3. The *U.S. Bank* court's analysis of *Paul Revere Life Ins. Co. v. Damus, Ecker, Rosenthal & Marshall, M.D.*, 864 So.2d 442, 444 (Fla. Dist. Ct. App. 2003) is not compelling because the case involved a challenge to misrepresentations, causing the contract to be voidable, as opposed to void, in the context of a disability insurance case. In sum, the court's decision in *U.S. Bank* is non-binding as an unpublished District Court decision that is inconsistent with a significant number of on-point Florida cases applying Florida law and public policy. This court therefore rules in accordance with the weight of Florida case authorities.

### C. Insurable Interest

In support of its motion for judgment on the pleadings, defendant alleges that the Policy was issued in accordance with Florida's statutory insurable interest law, and alternatively because noncompliance with the statutory requirement does not render the life insurance policy void *ab initio*. (D.I. 16 at 17) Specifically, defendant indicates that, at the time the Policy went

---

[3] *Pruco Life Ins. Co. v. Brasner*, 2011 WL 134056 at n.5 (S.D. Fla. Jan. 7, 2011) (holding that incontestability clauses have no effect where a policy is void *ab initio* for lack of insurable interest).

[4] *New England Mut. Life Ins. Co. v. Caruso*, 73 N.Y.2d 74 (1989).

[5] Defendant fails to explain why the *U.S. Bank* court's wholesale acceptance of a case based on New York law is more persuasive than the numerous Florida cases upholding the majority position. *See* n.2, *supra*.

into effect, the Policy's sole owner and beneficiary was a trust whose sole beneficiaries were Mr. Skidmore's spouse and children, who had an insurable interest in Mr. Skidmore's life. (*Id.* at 18) In response, plaintiff contends that Florida courts adopt a good faith standard when analyzing whether an insurance policy possessed a valid insurable interest at issuance. (D.I. 18 at 18)

A 2008 amendment to § 627.404 provides that

[a]ny individual of legal capacity may procure or effect an insurance contract on his or her own life or body for the benefit of any person, but no person shall procure or cause to be procured or effect an insurance contract on the life or body of another individual unless the benefits under such policy are payable to the individual insured or his or her personal representative, or to any person having, at the time such contract was made, an insurable interest in the individual insured. The insurable interest need not exist after the inception date of coverage under the contract.

Fla. Stat. Ann. § 627.404(1). Florida courts have construed this provision to mean that "transfer arrangements which pre-exist the inception of coverage violate the statute unless the transferee has an insurable interest." *John Hancock Life Ins. Co. v. Rubenstein*, C.A. No. 09-cv-21721-UU, D.I. 28 (S.D. Fla. Sept. 1, 2009);[6] *see also AXA Equitable Life Ins. Co. v. Infinity Fin. Group, LLC*, 608 F. Supp. 2d 1349, 1356-57 (S.D. Fla. 2009) ("[T]he procurement and the assignment of the policies was not done in good faith, but was part of a scheme devised by defendants to obtain interests in insurance policies, not yet issued, that insured lives in which the defendants had no insurable interest."); *Sciaretta v. Lincoln Nat'l Life Ins. Co.*, 899 F. Supp. 2d 1318, 1324 (S.D. Fla. 2012) ("I find that there is an implied covenant of good faith and fair dealing attached to Fla. Stat. § 627.404's requirement that there be an insurable interest at the inception of each insurance policy. Therefore if the insurance policy at issue was procured with the intention that

---

[6] Defendant alleges that the court in *Rubenstein* cited to Georgia law, not Florida law, and therefore the case is inapposite. (D.I. 24 at 2) The court notes that the decision specifically analyzes Florida Supreme Court authority, Florida Statute § 627.404, and Florida public policy. Other than a tangential citation to one Eleventh Circuit decision applying Georgia law, which did not provide the primary basis for the court's decision, this court fails to see how *Rubenstein* involves anything other than an application of Florida law. (D.I. 18, Ex. C at 4-5)

11

it will be assigned or otherwise transferred to a person or entity with no insurable interest in the life of the insured . . . it is void *ab initio.*") (internal quotations omitted)).

In the present case, the complaint alleges that

> [t]he Policy was manufactured for the benefit of a third-party investor, which lacked the requisite insurable interest in Mr. Skidmore's life at the time of the Policy's issuance. Neither Mr. Skidmore nor any person with an insurable interest in his life funded payment of the premiums on the Policy . . . The application for and purported ownership of the Policy by the Skidmore Trust was merely a sham transaction intended to circumvent applicable insurable interest laws and public policy.

(D.I. 1 at ¶ 47) Accepting these allegations as true and viewing them in the light most favorable to plaintiff, as the court must when considering a motion for judgment on the pleadings, the court concludes that plaintiff has sufficiently stated a cause of action based upon allegations of the lack of an insurable interest in the Policy.

### D. Counterclaims

Finally, defendant alleges that it is entitled to judgment on its counterclaims because plaintiff breached the contract and violated the duty of good faith by failing to pay the Skidmore death claim and delaying its decision on the claim. (D.I. 16 at 20) In response, plaintiff contends that defendant cannot prevail on its counterclaims because it has failed to show the existence of a valid and enforceable contract. (D.I. 18 at 20)

Under Florida law, a cause of action for breach of contract has three elements: "(1) a valid contract, (2) a material breach, and (3) damages." *Havens v. Coast Florida, P.A.*, 117 So.3d 1179, 1181 (Fla. Dist. Ct. App. 2013) (citing *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. Dist. Ct. App. 2006)); *see also Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). As previously stated, the court concludes that plaintiff has sufficiently pled a challenge to the validity of the Policy in the present matter for purposes of Rule 12(c). The court

12

therefore cannot rule as a matter of law at this stage of the proceedings that defendant will prevail on its counterclaim for breach of contract.

V. **CONCLUSION**

For the reasons discussed above, I recommend that the court deny defendant's motion for judgment on the pleadings. (D.I. 15)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available at http://www.ded.uscourts.gov/court-info/local-rules-and-orders/general-orders.

Dated: September 16, 2014

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE